Good afternoon, Your Honor. I'm Rosemary Kelley and I'm appearing on behalf of Appellant Oregon Investors. I'd like to reserve five minutes of my time for rebuttal. Oregon Investors has raised and believes there is one issue that this court needs to address. And that issue is whether the district court erred in invoking the doctrine of Pullman abstention in this case. And our position is, not surprisingly, that Pullman abstention is rarely, and in this case, wrongly invoked. Pullman abstention has three criteria that have to be met before it's invoked. The first criteria is that there has to be a sensitive issue of social policy before the court. The second issue is that a decision on that sensitive issue of social policy might obviate the need for a federal court to adjudicate. And the third criteria is that the question of the sensitive area of social policy, the resolution of it, has to be doubtful. So why have you got all three here? The question of what happens when a city council splits evenly down the middle in voting on whether to approve a resolution or not. I don't know what the answer to this question is being highly doubtful. It's a question of state law. And it deals with the way in which the state's political entities, like cities, counties, and so on, govern themselves. And what could be more sensitive than that? On land use, too. Well, the judge didn't ask land use. I do. Judge Clutcher anticipated my answer, although I'm glad to address it also. I didn't ask about land use. I was asking about... It doesn't matter what the question is. It's a question of how you govern yourself when you've got an evenly split governing body and you can't get an affirmative or negative answer on a particular issue. What happens to that? I mean, that strikes me as something that must happen with some regularity if city councils and... Well, I think they open borders and close the borders. It's possible. I think that is an answer that they often turn to. I think you have to look at the facts of this particular case. And in this particular case, Oregon investors had to get a resolution enacted. The ordinance of the city of Merced said in order to enact a resolution, you have to have four votes. I thought that there were four things that they could do with this, and one of them was reject it. And they couldn't get the votes rejected. They couldn't get the votes to approve it. It required affirmative action either way before the thing was actually disposed of. Actually, Your Honor, I think the ordinance that was at issue was one that says a resolution must be enacted by a majority vote. What kind of a resolution? There had originally been a zoning. And this was a TD. And the charter, the ordinance of the city said that if you want to get a resolution relating to the original TD passed, it has to be... TD meaning what? I'm blanking out on what it means. Public defender. Oh, I guess it doesn't. Plan development. Plan development, thank you. I was focusing on the question and not the definition. Plan development. In order to get a plan development, a change to the plan development, you have to do it in the same way that the original zoning, the original plan development was passed. And in this case, you had to do that by a resolution. The ordinance says in order to pass the resolution, you have to have four votes. But doesn't the city code say that you have to either approve or disapprove or modify or attach conditions? You have to do one of those four things. And approve, disapprove, modify or attach conditions. And they couldn't get enough votes to do any of those things. They couldn't get enough votes to approve. They couldn't get enough votes to disapprove. The city attorney said there was no action at all. No matter what the city attorney said, whatever the city attorney said is irrelevant to what happened here today. The city attorney's opinion is not binding upon this court. And again, yes, the statutes say that the city council may approve, it may deny, it may modify a zoning issue. But it says a resolution must be enacted by four votes. There were not four votes. We don't even have to get to the issue of it. There's a resolution to approve. There's a resolution to disapprove. There's a resolution to modify. There's a resolution to attach conditions. And it sounds to me like none of those resolutions would do it. Four things that the city code required the council to do. It required them to do one of those four things. They couldn't get a majority for any of those things. Except for the resolution. A resolution. I mean, you want us to hold that when they can get the votes to approve, that is a disapproval. Whereas the city code says, and the city attorney tells us, no, under California law, as we interpreted, you actually have to have an affirmative disapproval for it to be disapproved. Until you get either an affirmative approval, disapproval, modification, or attachment of conditions, the city council hasn't acted. I don't know. It doesn't sound crazy to me. Well, the results, it seems to me, would be crazy. Why? Well, first of all, let me address this. I'm sorry. I'm sorry. How many closer votes have we had recently in the Senate? I mean, you know, bodies go back and reconsider. Political bodies, as part of the political process, go back and reconsider the decisions they've taken, even when they fail to get a response of action. They go back and try again and try again. And that happened in this case, Your Honor. There was a resolution. A resolution to allow this project. There was no resolution to disapprove this project. There was no resolution to modify this project. There was a resolution to allow this project. That resolution was voted on three times by the city council at three successive meetings. What happened the first time? The first time it failed, four to three. The next two times, there was a tie vote. Now, when I said, perhaps unjudiciously, that the results could be crazy, it seems to me that to have a result that would say that you can go back to the city council three times and they had tied, and you have to go back and forth. I mean, is there some point at which you'd say you've gone enough? Well, it seems to me that raises an issue. I think what Coleman says is, you go to state courts, and let the state courts, who, after all, have much better feel for these questions of social policy, and who are charged with interpreting state law in a direct way and what have you, tell us what happens, and at what point does the vote become futile, or the extra action become futile, so that this is deemed to be an effect of denial, which is really what you want us to hold, that by voting three times and being unable to approve it, that must be a denial. Yes, Your Honor, I do. And I think that the federal court has the power to say it is futile. But we're reviewing for abuse of discretion, are we not? I'm sorry, Your Honor. Are we not reviewing for abuse of discretion? The district court looks at that and says, I'm invoking Coleman, because, to me, it seems like the kind of question that ought to be resolved. These are three important factors, and ought to be resolved by the state courts. I'll go for the view that's for abuse of discretion. Your Honor, the case has said several things about the kind of abuse of discretion that is applied in a Coleman abstention or in any kind of an abstention issue. I think that's a yes but issue. Yes, I think it is. Okay. Yes but two things. And one is that the cases in this circuit say that the abstention is very narrow because the basic rule is the jurisdiction is to be exercised by federal courts. And within the narrow abuse of discretion, this court looks de novo at whether the criteria have been met for the particular abstention doctrine. So that you have to look de novo at whether the three criteria for Coleman abstention have been met. And our point is that, first of all, you don't even have to get to this issue of whether there's a tie vote. The vote can pass. The resolution was not enacted. And so it is right. I want to go a bit further to Coleman. He said, gee, this is, we need more study. We need to think about it some more. So we're going to send the planning commission, back the planning commission for more study. The resolution would then also not have passed would you be here saying, well, they didn't pass it and therefore take it away. You could see it as a denial. Let's say they've done that. That's hard to answer. Of course it's hard to answer. But I would have to do something. Yeah. In this case, we did ask the city council to pass this resolution three times. And three times had failed. In that time, they had said, all right, we recognize that the planning commission said that we recommended this unanimously, but we've got a couple of questions for them. We want to send it back and have those couple of questions answered. No, we wouldn't be here. I mean, if it came back again and what they're going to say is. Why? You've got three non-votes. You still have to knock your resolution out. They decide to send it back to the planning commission. How is that different? Because at that point, it would not appear futile. It would appear at that point as if a recommendation, something from the planning commission, might give them some basis to change their mind. That didn't happen. If, however, it did come back and, again, we had a tie vote, yes, we would be here today. Let me ask, if this goes back on permanent extension, what would be the issues that you would present to the state court? I think that's an interesting question. I mean, I've thought about how am I going to present this. What I suppose we would do is we would simply file this action in state court, just as we have now, raising the same issue. And then the defendants would say, no, there's no action. And at that point, the state court would make a decision. You know, I've tried to think procedurally how it would play out. At that point, then, I would presume that we would have to have all of our decisions decided by the state court, which is another thing. Sometimes when things have been abstained under the Pullman Doctrine, they've been able to come back to the federal court. I see no way in which we could come back to federal court. Well, that's another issue in this case. Ordinarily, when the Pullman extension doctrine is invoked, the district court does not dismiss the case. It simply stays it. Your Honor, I've looked at Ninth Circuit cases in the last few days, relating to 1983, because I wanted to see whether this Court ever invokes Pullman extension for a civil rights case. And the ones I looked at were taking issues. But one in 1978, the Sedgwick case before that in 1978, the Court said, yes, Pullman extension is appropriate, but you haven't met the Burkhardt guidelines. Therefore, we're going to keep jurisdiction, and we'll go back, and the state issues will be decided, and then it will come back here. That's not the status that we have here. What's the gravity under your civil rights complainant's decision? My client develops and builds low-cost housing. Right. And they had a project that they had property for in the city of Merced. What all did they have property for? They had a contract. They were under contract. Contingent. Contingent upon approval. That is correct. And so, yes, both they and the owners of the property came to the city to ask for approval. The client's mission gave it to them. The city council denied it. During the earlier hearings, when it was before the city council, two of the city council members said, no, we don't want it there because there's too much low-cost housing. Factually, we think that's wrong, but we also think that that is a basis. The reason they didn't want it was because they didn't want the people who would live there. That's an unconstitutional basis. Do you get to sue the whole city of Merced, the city council, for the legislative statements of a couple of members of the city council? Yes, I think we do get to sue the city. We may not prevail, but that isn't the issue here. Yes, I believe that the federal district court has jurisdiction to decide if this resolution did not pass because the city council used discriminatory reasons. Well, we can't do it just because one somebody. I mean, now I think you're talking, I'm probably talking about evidentiary issues. No, we can't decide. I think the cases state that because a minority or one person has made a statement, we can't necessarily do it. You have about two and a half minutes. I know, and I'd like to read your statement. Thank you, Your Honor. Okay, we'll give it another second. Thank you, Your Honor. Sandra Levin for Appellee City of Merced. First, I'd like to correct the record on a couple of issues that were raised by a talent council. This was not voted on three times with three tie votes. There were three votes that were in some way related to this project, but the first two were on different funding issues. Not on the project approval. There was only one vote on the project approval. That was the June 4th vote that was a tie vote. One council member was absent. The city council tied three to three in their vote. That's the way I read the complaint. Yes. I'm taking that from both the complaint and the attachment to the complaint, and I can give you the archetype for that. All right. Moreover, the complaint in this exhibit states clear that the city acted promptly on this, that the recommendation of the planning commission came forward on May 23rd, and within a matter of less than two weeks, the city council had it on the agenda June 4th. So this is not a case of a long pattern of delay, repetitive tie votes, those kinds of things. Does that have anything to do with Pullman abstention, what you're saying now? It has to do with the sort of equity arguments that a council was making. As for the Pullman abstention issue directly, I think the court has already identified the sensitive issues of social and public policy involved. Explain something to me before you get to that. So they have this vote. There's an absent city council member. What happens to the thing? The city council meeting ends. You're going to have to fill in the section, right? Right. And what happens to an agenda item like that that is neither voted on to approve or disapprove or defer back to the planning commission or anything else? Do they say, well, we're tied here because we have a missing city council member. We'll put it off to the next meeting of the city council and vote on it again? What happens to it? Generally, it comes back. It's a matter of local practice and it's not in the record in this case how it's handled in this particular jurisdiction. Generally, there is some process, whether they schedule it in consultation with the applicant or they simply pick a date for the convenience of the city and put it on the agenda, but it would come back. It's a matter that has not been resolved unless the applicant says, I'm not interested anymore. And as I said, it's not in the record, but I believe that's essentially what happened in this case. The applicant said, no, I'm going to sue instead. Another factual issue that I wanted to raise from the record is that the complaint in the exhibit also made clear that what killed this deal, if you will, was not the tie vote in the city council meeting, but the fact that the landowner backed out of the deal. Took the land. Took the land. Shouldn't this case be perhaps the truth that there is a failure on the rightness of claim rather than the claim of extension? We think so, Your Honor. We think that the California case law is actually clear enough on the issue of the significance of a tie vote that this can be decided directly on rightness and failure to save claim grounds. The district court, unfortunately, did not have the Fisher case before it when it made its decision, and I think the Fisher case, Fisher v. Board of Police Commissioners, makes quite clear that a tie vote is no action at all. In that case, there was a tie vote. The city tried to contend that it was a denial. The plaintiff tried to contend that it was an approval, and the court says, no, you're both wrong. This is neither a denial nor an approval. This is no action at all, and my request is to send it back to the city and ask them to complete their action. The Fisher is a 1965 case. Is that the case you're talking about? I don't have the year handy here. Just a moment. I'll look it up. So there's a discount of 17? Yes, 1965. It wasn't before the court. No, because it hadn't been decided, but because the parties hadn't found it in the district court, and we briefed it on appeal here. There were a number of other cases that made statements that a tie vote is no action, but none of them were as squarely on point as the Fisher case is, and we do have the Fisher case brief and no contrary citations from appellants in this case. It seems to me it's not so much that it's no action or some action, but the fact that it would come back onto the calendar of counsel for a vote would have everybody there. Yes, Your Honor. That's essentially one of the primary consequences of it being no action. Had it been a rejection, then the appellant would no longer have the right to have it heard. Their application would be dead. That didn't happen here. There was no rejection. Appellant argues futility, and I'd like to address that for just a moment. Although there is an exception known as the futility doctrine, it's not of the type that appellant suggests here. The futility exception applies where a sufficient number of prior applications have been rejected to allow the court to conclude that future applications would be similarly rejected. Here, no applications were rejected. They went to the city council once, and it was a tie vote. Also, there's no precedent for making a claim of futility based upon external factors not within the city control. In other words, their argument for futility is, we no longer care whether the city council approves or disapproves this application because the landowner backed out of the deal. That's not the nature of a futility exception. You can't look to a factor outside of the city's control and say, our ability to do this project has disappeared, so our application is now futile. The city is entitled to pursue its process. One of the basic purposes of the rightness doctrine is to protect the city's ability to pursue this process without legislative interference until it's come to a final decision. That didn't happen here. Unless there are other questions, Your Honor, I'll rest. Thank you. Your Honor, I swear and affirm that this is my full vote. Thank you, Your Honor. Briefly, the factual issue. There were three votes. The funding vote and the vote to approve the resolution were intertwined, as can be seen by the city attorney's comments at the earlier of the hearing when the attorney warned the city council members, be careful about your vote when you are voting on the funding issues so that it does not appear that you are rejecting this project because of the low-income housing. So as far as the city council is concerned, the funding and the resolution were intertwined. I certainly didn't mean to say something different than is in our complaint. What we said all along was at the end, they wouldn't even look at the funding issue. In the beginning, they did check. But there weren't three tie votes, were there? No, there were not three tie votes. You sort of told us that there were three tie votes, but there weren't. I got an answer to an earlier question. I said that the first vote was not a tie. Whatever. I think I did. I'm sorry. No, you clearly did. Thank you. As far as the second factual issue as far as the landowner backing out, the landowner backed out when the city rejected the resolution. When the project couldn't go forward, the landowner backed out. And then this feudal from your side did not move in the sense that futility is ordinarily used. I know because the city council just threw on a concrete block wall against it. When I was arguing futility earlier, I was arguing it on the basis that we had been before the city council three times and could not get the plan information to give unanimous approval. But we couldn't get the city council to approve it. That was the futility that I was addressing because it seems to me it goes to this issue about a tie vote that we had been discussing. And it was in the context of that that I was attempting to address it. That at some point you've got to say a tie vote has some sort of consequences or becomes feudal. As far as the Fisher case is concerned that has been raised, that was the case before the board of commissioners, police commissioners. Somebody had had a permit to sell secondhand items, had been convicted, asked to have their permit renewed. There was a question whether it should be denied or tied on that. I don't think it has any applicability in this case. Thank you, Your Honor. I appreciate it. Okay. Thank you very much. The case is filed as passed amended. Thank you.
judges: B. Fletcher, Kozinski, Trott